IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**ESTATE OF MAGDALENA RIOS DE DOMINGUEZ,**
*Plaintiff/Appellant,*


*v.*


**RENEE KAY DOMINGUEZ,**
*Defendant/Appellee.*

———————

No. CV-24-0102-PR
**Filed April 16, 2025**

———————

Appeal from the Superior Court in Maricopa County
The Honorable Randall H. Warner, Judge
Nos. CV2020-011404, CV2020-013833, CV2022-001764
(Consolidated)

———————

Opinion of the Court of Appeals,
Division One
257 Ariz. 294 (App. 2024)

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

———————

COUNSEL:

Christopher A. Combs (argued), Haille Saal-Khalili, Combs and Saal, P.C., Phoenix, Attorneys for Estate of Magdalena Rios De Dominguez

Lance R. Broberg (argued), Nicholas A. Beatty, Tiffany & Bosco, P.A., Phoenix, Attorneys for Renee Kay Dominguez

———————

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which JUSTICES BOLICK, KING, and JUDGE GARD* joined. VICE CHIEF JUSTICE LOPEZ authored a concurring Opinion, in which JUSTICES BEENE AND MONTGOMERY joined.

---

CHIEF JUSTICE TIMMER, Opinion of the Court:

**¶1** This case stems from a family disagreement over ownership of a vacant lot. Renee Dominguez has what purports to be a recorded deed to the lot. But her mother-in-law, Magdalena Rios De Dominguez, claims the deed is a forgery and that she owns the lot through a previously recorded deed.[1] The primary issue here concerns the applicability of A.R.S. § 12-524, which establishes a five-year statute of limitations to quiet title to real property against a party who claims ownership, holds a "recorded deed" for the property, and has paid its taxes for the preceding five years. After five years without challenge, title to the property is given to that party and future challenges are barred. *See* A.R.S. § 12-527.

**¶2** We decide that a "recorded deed" under § 12-524 includes any deed that is facially valid, including a forged deed. Because Renee's deed is facially valid and she satisfied § 12-524's other elements, the five-year statute of limitations applies here. We also hold, however, that Magdalena sufficiently preserved equitable tolling and discovery rule arguments that, if successful, would make her complaint timely under § 12-524. The court of appeals should consider these arguments on remand.

---

* Justice Maria Elena Cruz is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Judge Lacey Gard, Judge of the Arizona Court of Appeals, Division 2, was designated to sit in this matter.

[1] Because this lawsuit involves family members with the same last name, we refer to them by first names. Also, Magdalena died during this litigation, and her estate assumed her place as a party. Nevertheless, we refer to the estate as "Magdalena."

## BACKGROUND

¶3        In 1995, Magdalena and Isidro Dominguez acquired a lot in Maricopa County (the "Property"), taking title through a recorded joint tenancy deed.   After divorcing in 1998, they purportedly conveyed the lot to their son, Jose, and his wife, Renee, through a deed recorded in 2003 (the "2003 Deed").   Thereafter, Jose and Renee paid all assessed taxes on the Property.

¶4        Isidro died in 2012, and Jose died eight years later in 2020. Shortly after Jose's death, Magdalena discovered the 2003 Deed and claimed it had been forged.   Renee disputes this, asserting that Jose originally bought the Property but titled it in his parents' names before they ultimately transferred title to Jose and Renee via the 2003 Deed.

¶5        Later in 2020, Magdalena sued Renee to quiet title to the Property and recover damages pursuant to A.R.S. § 33-420 for wrongful recordation of the 2003 Deed.   Magdalena also recorded a lis pendens with the county recorder, which gave notice that a pending lawsuit affected the Property's title.   *See* A.R.S. § 12-1191(A).   Renee demanded that Magdalena quitclaim any interest in the Property to her.   After Magdalena refused, Renee filed a separate lawsuit asking to quiet title to the Property in her name and seeking damages from Magdalena pursuant to § 33-420 for wrongfully recording the lis pendens.   The superior court consolidated the cases.

¶6        The court ultimately granted summary judgment for Renee on all claims through successive orders addressing separate motions.   It ruled in relevant part that even if the 2003 Deed was forged, § 12-524's five-year statute of limitations barred Magdalena's quiet title claim, and therefore § 12-527 conferred on Renee "full title precluding all claims."   It also ruled that quieting title for Renee barred Magdalena's § 33-420 claim. The court of appeals affirmed.   *See Estate of Dominguez v. Dominguez*, 257 Ariz. 294 (App. 2024).

¶7        We granted Magdalena's subsequently filed petition for review to decide whether a forged deed can qualify as a "recorded deed" under the statute of limitations provided by § 12-524 and, if so, whether Magdalena preserved for appellate review her argument that the limitations period had not yet run before she sued Renee, both issues of statewide importance.   We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

¶8            We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party.    *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021).    Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."    Ariz. R. Civ. P. 56(a).    Likewise, whether a party waived an argument by failing to raise it to the superior court is a question of law that we review de novo.    *See Wallace v. Smith*, 255 Ariz. 377, 379 ¶ 4 (2023); *Russo v. Barger*, 239 Ariz. 100, 103 ¶ 11 (App. 2016).

## A.    A Forged Deed Can Qualify As A "Recorded Deed" Under § 12-524.

¶9            Arizona has several statutes of limitation for actions to quiet title to real property, the applicability of which depends on the particular circumstances.    *See* A.R.S. §§ 12-522 through -526.    Here, we are concerned with § 12-524, which applies to quiet title actions involving a lot in a city or town.    Section 12-524 provides as follows:

> An action to recover a lot located in a city or town from a person having a recorded deed therefor, who claims ownership and has paid the taxes thereon, shall be brought within five years after the cause of action accrues, and not afterward, provided that the person against whom the action is brought, by himself or his grantors, has claimed ownership thereof and has paid the taxes thereon for at least five consecutive years next preceding the commencement of such action.

If a quiet title action is not timely filed under § 12-524, the action is barred and the person "entitled to the bar shall be held to have full title precluding all claims."    *See* § 12-527.

¶10            Thus, pursuant to § 12-524, in combination with § 12-527, Magdalena's quiet title action is time-barred, and Renee is due full title to the Property, if (1) the Property is a lot located in a city or town; (2) Renee has a recorded deed for the Property; (3) Renee claims ownership of the Property; and (4) Renee paid taxes on the Property for five consecutive years before Magdalena filed her lawsuit.    For purposes of deciding whether the superior court correctly entered summary judgment for Renee, we assume the 2003 Deed is a forgery.    The issue before us, therefore, is

whether a forged deed constitutes a "recorded deed" under § 12-524. Magdalena argues that because forged deeds are *void ab initio*—a nullity that cannot convey property—a forged deed cannot be considered a "recorded deed." Renee counters, and the prior courts here agreed, that a "recorded deed" under § 12-524 means a document that facially bears the indicia of a proper deed even if the deed was forged. *See Dominguez*, 257 Ariz. at 299 ¶ 17 (concluding that the 2003 Deed was "valid on its face" and "purport[ed] to operate as a conveyance" because it "properly described the Property, and the signatures of the grantors were notarized").

¶11 We determine the meaning of "recorded deed" in § 12-524 de novo. *See Molera v. Hobbs*, 250 Ariz. 13, 24 ¶ 34 (2020). "In doing so, [w]e interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Id.* (alteration in original) (quoting *Ariz. Chapter of the Associated Gen. Contractors of Am. v. City of Phoenix*, 247 Ariz. 45, 47 ¶ 7 (2019)). If § 12-524 is clear and has a single reasonable meaning, we will apply that meaning without further analysis, absent an absurd or unconstitutional result. *See id.*; *4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 5 (2022). If § 12-524 has "more than one reasonable meaning, we apply secondary interpretive principles, such as considering 'the statute's subject matter, historical background, effect and consequences, and spirit and purpose.'" *See Molera*, 250 Ariz. at 24 ¶ 34 (quoting *Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 13 (2020)).

¶12 We start with § 12-524's text. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."). Our statutes do not define "deed" or "recorded deed," so we apply the common meaning to those terms unless the context suggests a special meaning. *See Silverman v. Ariz. Dep't of Econ. Sec.*, 257 Ariz. 384, 388 ¶ 14 (2024). The Merriam-Webster Dictionary defines "deed," in relevant part, as "a signed and usually sealed instrument containing some legal transfer, bargain, or contract." *See Deed*, Merriam-Webster, http://www.merriam-webster.com/dictionary/deed (last visited Apr. 21, 2025). It defines the verb "record," in relevant part, as "deposit an authentic official copy." *See Record*, Merriam-Webster, http://www.merriam-webster.com/dictionary/record (last visited Apr. 21, 2025). Black's Law Dictionary similarly defines these words. *See Deed*, Black's Law Dictionary (12th ed. 2024) (defining "deed" as "[a] written instrument by which land is conveyed," and "[a]t common law, any

5

written instrument that is signed, sealed, and delivered and that conveys some interest in property"); *Record*, Black's Law Dictionary (defining "record" as "[t]o deposit (an original or authentic official copy of a document) with an authority").

¶13 Applying these definitions to § 12-524 begs these questions: Does the deed have to legally operate to convey property to constitute a "recorded deed"? Can a forged deed constitute a "recorded deed" under § 12-524? The answers to these questions form the heart of the controversy here. For several reasons, we conclude that when read in context with the entire statute and with other related statutes, the only reasonable meaning for "recorded deed" in § 12-524 is a recorded written instrument that purports on its face to convey real property from a title-holding grantor to a grantee. Section 12-524 does not require that the deed legally operate to convey title, and forged deeds that bear the indicia of valid deeds can constitute a "recorded deed" under the statute.

¶14 First, § 12-524, together with § 12-527, provides a method for obtaining title to property that does not depend on the validity of a deed. If a person claims ownership of a city or town lot, has a recorded deed, and has paid taxes for five consecutive years, the person is held to have title, and challenges to that title are barred. *See* §§ 12-524, -527. Importantly, it is not the "recorded deed" that conveys title; it is compliance with § 12-524 that conveys title. Thus, § 12-524 grants title by adverse possession, albeit not adverse possession as defined for the other limitations statutes concerning real property. *See Sparks v. Douglas & Sparks Realty Co.*, 19 Ariz. 123, 126, 127–28 (1917) (characterizing the predecessor statute to § 12-524 as conveying title by "adverse possession"); § 12-521 (defining "adverse possession" unless otherwise required by a statute's context).

¶15 We agree with Magdalena that a forged deed cannot convey title to real property. *See* A.R.S. § 33-401(B) (requiring that "[e]very deed or conveyance of real property must be signed by the grantor," thereby implicitly precluding conveyance by a forged deed). But that is not what occurs when a person with a recorded forged deed satisfies § 12-524. The statute, not the deed, controls the conveyance. Together with the payment of taxes and a claim of ownership, the recorded deed—even a forged deed—provides notice of an adverse ownership claim. Thus, the out-of-state cases Magdalena cites holding that forged deeds are void from the start, cannot convey title, and therefore are not subject to a statute of

6

limitations, are inapposite. *See, e.g.*, *Hancock v. Kulana Partners, LLC*, 452 P.3d 371, 374 (Haw. 2019) ("[A] deed is *void ab initio* for fraud, such that a claim challenging the validity of the deed is not subject to a statute of limitations."); *Faison v. Lewis*, 32 N.E.3d 400, 404 (N.Y. 2015) (finding that a forged deed is *void ab initio* and thus a "claim challenging a conveyance or encumbrance of real property based on such deed" is not subject to statute of limitations).

¶16            Second, if "recorded deed" means a legally valid deed that operates to convey title, § 12-524 would be rendered superfluous. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) (disapproving interpretations that render language superfluous). As we have previously observed, if title is conveyed by a legally valid deed, there would be no need for the owner to establish ownership under § 12-524 by paying taxes for five consecutive years or otherwise acting to claim ownership. *See Sparks*, 19 Ariz. at 127 (observing that "[i]f the deed actually conveyed a perfect title this would be title not color," making a claim under the predecessor to § 12-524 unnecessary).

¶17            Third, the statutes sandwiching § 12-524 establish limitation periods for recovering real property that reflect the legislature's intent that a "recorded deed" under § 12-524 must merely have the facial attributes of a valid deed, even if the deed was forged or otherwise invalid. *See* A.R.S. §§ 12-523, -525. Section 12-523(A) provides a three-year statute of limitations "to recover real property from a person in peaceable and adverse possession under title or color of title." Although § 12-523(B) includes defective instruments within the definition of "color of title," it explicitly excludes instruments that "include the want of intrinsic fairness and honesty." Thus, under § 12-523(B), a forged deed would not constitute "color of title" because it results from a dishonest act. Because the legislature knows how to exclude instruments devoid of fairness and honesty from constituting "color of title," we must conclude it purposefully chose not to make a similar exclusion in § 12-524. *See Silverman*, 257 Ariz. at 390 ¶ 20 (concluding that the legislature's failure to include similar limiting language in a related statute demonstrates that the legislature purposefully omitted that language); *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 386 ¶ 18 (2023) (highlighting that statutes explicitly

7

voiding certain contracts show "that the legislature knows how to deem a contract void when it so wishes and did not do so" in the statute at issue).

¶18        Section 12-525(A) provides a five-year statute of limitations "to recover real property from a person in peaceable and adverse possession, and cultivating, using or enjoying the property, and paying taxes thereon, and claiming under a deed or deeds duly recorded." Significantly, the legislature precluded application of this statute to a person possessing land "who in the absence of this section would claim title through a forged deed." § 12-525(B). To emphasize the point, the legislature provided that "no one claiming under a forged deed or a deed executed under a forged power of attorney shall be allowed the benefits of [§ 12-525]." *Id.*

¶19        Consequently, § 12-525 necessarily reflects the legislature's view that subsection (A)'s reference to a deed "duly recorded" would include a forged deed absent subsection (B)'s exclusion of forged deeds from the benefits of subsection (A). If not, subsection (B) would be rendered superfluous, a conclusion we generally avoid. *See Nicaise*, 245 Ariz. at 568 ¶ 11. Also, the legislature's explicit exclusion of forged deeds from the benefits of § 12-525 shows the legislature was aware that persons with forged deeds could attempt to obtain title through the statute, but it chose not to make a similar exclusion in § 12-524. We must conclude that this decision was purposeful, and we cannot insert language into § 12-524 the legislature chose not to include. *See ACLU of Ariz. v. Ariz. Dep't of Child Safety*, 251 Ariz. 458, 463 ¶ 20 (2021) ("[W]hen the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded." (quoting *Arpaio v. Citizen Publ'g Co.*, 221 Ariz. 130, 133 ¶ 9 (App. 2008))); *State v. Averyt*, 179 Ariz. 123, 129 (App. 1994) (stating a court will not insert into a statute "words of limitation which the legislature has expressly omitted"); *see also* Scalia & Garner, *supra* ¶ 12, at 93 (addressing the "omitted-case canon," which provides that "a matter not covered is to be treated as not covered").

¶20        Our interpretation of § 12-524 is supported by long-standing opinions from this Court. In 1917, just four years after Arizona's first state legislature enacted the inaugural state civil code, this Court addressed paragraphs 700 and 702 of the Revised Statutes 1913, which were substantially identical predecessors to §§ 12-524 and -527. *See Sparks*, 19 Ariz. at 124. There, Aurella Sparks sought to satisfy a money judgment

against her former husband, John Sparks, by seizing three city lots she believed he owned. *Id.* at 123, 126, 128. But in 1907, John and the lots' co-owners had recorded deeds ostensibly conveying ownership of those lots to Douglas & Sparks Realty Company, Inc. (the "Company"). *See id.* at 126. Thereafter, the Company claimed ownership of the lots and paid the property taxes for at least five consecutive years preceding Aurella's lawsuit. *See id.* at 125. When the county sheriff attempted to seize the lots and sell them to satisfy Aurella's judgment, the Company successfully enjoined the sale by asserting title to the lots—not through the deeds but by adverse possession under paragraphs 700 and 702. *See id.* at 123–24.

¶21        Before this Court, Aurella argued the Company had not satisfied the "recorded deed" element of paragraph 700 (now § 12-524). *See id.* at 126–27. She maintained that because she and John were married in 1907, she had a community property interest in the lots, and her acknowledged signature on the deeds was therefore required by law before they could be validly recorded. *See id.* at 125–26, 128. John had signed her name on the deeds under a purported power of attorney, which Aurella claimed was "tinctured with fraud." *See id.* at 126, 128.

¶22        This Court rejected Aurella's argument and resolved the appeal in the Company's favor. *See id.* at 126–30. The Court began by pointing out that the Company was "not claiming here that the deeds operated to effect a conveyance of the city lots, but that such deeds operated to show color of title as one of the elements necessary to show its ownership of the property by adverse possession under the statute." *Id.* at 126. The deeds had "all the elements of good and sufficient deeds" by naming grantors and a grantee, expressing lawful consideration, accurately describing the lots, and using words of conveyance. *Id.* Because the deeds "were duly signed and acknowledged and certified to be recorded by the grantors named in the body of the deed," there was no need for Aurella to sign the deeds for them to constitute color of title. *Id.* at 126–27. The Court acknowledged that the deeds might be void on their face as to Aurella, meaning they could not, standing alone, convey her interest in the lots. *See id.* at 127. But this did not prevent the deeds from satisfying an element needed to establish adverse possession under paragraph 700. *See id.* The Court reasoned that the defect in Aurella's argument sprang from "a failure to distinquish [sic] between the rights based on a color of title which are given to the claimant under the statutes, and which may be asserted against all the world, and title given by a conveyance which would

9

be governed by the laws applicable to transfers of title by act of parties." *Id.*

**¶23** Significantly, the Court defined "recorded deed" under paragraph 700 as "a deed not void upon its face, which, tested by itself, has all the constituent parts knitted into that kind of an instrument, not that it is a conveyance, but that it purports to operate as a conveyance." *Id.* at 127. The Court emphasized that "it is not necessary that the grantor should have had title either to the whole or to any part of the land conveyed" because "title founded on adverse possession under a deed which purports to convey the title is wholly independent of prior conveyances or of the grantor's actual title." *Id.* at 128 (citation omitted). Thus, even if the deeds there were legally inoperative in light of extrinsic facts and circumstances, paragraph 700 remained applicable to convey title by adverse possession. *See id.*; *see also Work v. United Globe Mines*, 12 Ariz. 339, 347 (1909) (addressing what is now § 12-525 and stating the general rule that a deed that is void for reasons not appearing on its face is "sufficient upon which to base title by adverse possession"); *Costello v. Muheim*, 9 Ariz. 422, 426–27 (1906) (to same effect).

**¶24** Notably, the Court also concluded that although "good faith is an element of color of title" in many statutes, including what is now § 12-523, it was not an element in paragraph 700. *See Sparks*, 19 Ariz. at 128. Consequently, a "recorded deed" under that statute constituted "color of title without regard to the good or bad faith of the claimant." *Id.* "[S]uch matters are irrelevant to the inquiry." *Id.* at 129.

**¶25** The Court concluded by rejecting Aurella's request that it override paragraph 700 as a matter of equity. *See id.* It reasoned that "when the statute is perfectly clear and has determined the matter with all its circumstances, equity cannot intermeddle to supply a supposed deficiency of those things which are required." *Id.* Doing so, the Court cautioned, would supplant the legislature's role in declaring the law. *See id.* The Court noted that Aurella was not without a remedy, because she could have timely asserted her fraud claim to "interrupt the running of the statute." *See id.* But the Court resolved that "[w]hen the bar of the statute is complete, a party cannot be heard by proof outside the deed to overthrow the statute." *Id.* at 129–30.

**¶26** After *Sparks*, we have twice concluded that a deed may constitute a "recorded deed" under § 12-524 so long as it appears on its face

to be a valid deed. In *Nicholas v. Giles*, 102 Ariz. 130, 133 (1967), we concluded that although a recorded tax deed was legally void because it lacked an underlying affidavit, it nevertheless constituted a "recorded deed" under § 12-524 because the deed was not void on its face. As in *Sparks*, the Court interpreted § 12-524 as "[doing] entirely away with all necessity for judicial investigation into the hidden motives of the claimant and all questions respecting his good faith." *See id.* at 134 (quoting *Sparks*, 19 Ariz. at 127).

¶27 Likewise, in *Quality Plastics, Inc. v. Moore*, 131 Ariz. 238, 241–42 (1981), this Court found that a void tax deed was nonetheless a "recorded deed" under § 12-524 because the deed was facially valid. We reiterated that "[t]he recorded deed requirement of § 12-524 is in the nature of a color of title requirement" and does not actually have to convey title to property. *Id.* Instead, the recorded deed under § 12-524 serves as a form of notice, which is important because the statute does not require a visible appropriation of property. *Id.* at 242.

¶28 We do not know why the legislature chose to permit claimants under what is now § 12-524 to establish ownership of a city or town lot by showing, along with other elements, color of title under a recorded deed that may be the product of forgery or fraud. Although the predecessors to §§ 12-523 and -525 were adopted almost verbatim from Texas statutes, *see Nicholas*, 102 Ariz. at 132–33, § 12-524 is not based on any other state's statute, and we were unable to locate any legislative history explaining its enactment.

¶29 Section 12-524 was originally inserted into Arizona's 1901 Territorial Code as part of a comprehensive revision of territorial laws. *See* Rev. Code Ariz. § 2940 (1901); Biennial Message of Governor N.O. Murphy to the Twenty-first Legislative Assembly of the Territory of Arizona at 30–31 (1901) (citing Act 49 of the Twentieth Legislature) (explaining appointment of a code commission to revise existing laws and "insert such new provisions as they may deem necessary and proper"). At the time the territorial legislature adopted § 12-524 (then § 2940)—while simultaneously including §§ 12-523 and -525 (then Ariz. Rev. Code §§ 2935 through 2937), with their respective bad faith and forgery exceptions—cities and towns in Arizona were growing rapidly. For example, from 1870 through 1900, Phoenix's population grew from 240 to 5,544. *See* David R. Dean & Jean A. Reynolds, Hispanic Historic Property Survey 13 (2006) (available at https://www.phoenix.gov/content/dam/phoenix/pddsite/documents/

11

hp/pdd_hp_pdf_00044.pdf). And land ownership was the frequent subject of litigation. *See, e.g.*, Mr. Chenoweth, *Strong Appeal*, Ariz. Republican, Mar. 20, 1895, at 4 (stating in an opinion article that "I am now paying, and have for years, paid taxes on land claimed by the Camou party, and the title to which is now a matter of litigation in the United States land court."); *Lands Thrown Open*, Tombstone Epitaph, May 12, 1901, at 1 (describing dispute over boundaries). It may be that the legislature enacted the predecessor to § 12-524 to provide a simple and quick way to clear title to city and town lots for those who paid property taxes, thereby encouraging investment, development, and growth without the burden of extended litigation.

**¶30** But as Magdalena and our concurring colleagues point out, interpreting § 12-524 as permitting claimants to satisfy one element with a forged deed may have unanticipated and harsh consequences today, especially for vulnerable people who mistakenly put their trust in others to manage their financial affairs. If the time has come for a change in policy, however, it is for the legislature to make that decision, not this Court. *See Sparks*, 19 Ariz. at 128 ("We do not feel at liberty to insert in the operation of the statute an element which the law has not itself interposed."). Section 12-524 has endured for more than one hundred years without substantive legislative change. *See* Ariz. Code § 2940 (1901); Rev. Code Ariz. § 700 (1913); Rev. Code Ariz. § 2052 (1928); Ariz. Code § 29-104 (1939). As we recently reiterated, "[w]hen rights are clearly established and defined by a statute, equity has no power to change or upset such rights." *See Aroca v. Tang Inv. Co. LLC*, CV 24-0049-PR, slip op. at 4 ¶ 21 (Ariz. Mar. 31, 2025) (quoting *Valley Drive-In Theatre Corp. v. Superior Court*, 79 Ariz. 396, 399 (1955), which relied on *Sparks*).

**¶31** In sum, a deed is a "recorded deed" if it has all the attributes of a valid deed that conveys real property, *see* § 33-401, and is recorded with the county recorder. *See Sparks*, 19 Ariz. at 127. If the deed lacks an element on its face, it cannot constitute a "recorded deed" under § 12-524. Courts need not examine extrinsic facts to determine whether a facially valid deed was forged or is otherwise defective. Here, because the 2003 Deed was facially valid under § 33-401, we agree with the superior court and the court of appeals that the deed constitutes a "recorded deed" under § 12-524.

## B.    Magdalena Preserved Her Equitable Tolling And Discovery Rule Arguments.

**¶32**        Magdalena next argues the court of appeals erred by finding she waived arguments that her claims were timely because (1) the court should have equitably tolled the five-year limitation period in § 12-524; and (2) the statute of limitations applicable to her § 33-420 damages claim either did not accrue until she belatedly discovered the 2003 Deed or it should be equitably tolled.    *See Dominguez*, 257 Ariz. at 300 ¶¶ 20, 24.

**¶33**        Generally, an appellate court will not consider arguments first raised on appeal.    *See Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 482 (1986).    The rule is intended to prevent surprise to the party against whom the new argument is raised, "[t]he theory being that he doesn't have the opportunity to defend against it as he would have had it been raised in the trial court." *Int'l Life Ins. Co. v. Sorteberg*, 70 Ariz. 92, 98 (1950), *modified on other grounds on reh'g*, 70 Ariz. 171 (1950).    Even so, the rule is prudential, and courts have made exceptions for issues of public importance or that are likely to recur.    *See Estate of DeSela v. Prescott Unified Sch. Dist. No. 1*, 226 Ariz. 387, 389 ¶ 8 (2011).

**¶34**        We agree with Magdalena that she adequately preserved her equitable tolling and discovery rule arguments for appeal.    First, in responding to Renee's motion for summary judgment that focused on the competing quiet title claims, Magdalena argued that under the doctrine of equitable tolling, "Renee is not entitled to assert the protection of any [statute of limitations]."    Although Magdalena lodged the equitable tolling argument under a heading pertaining to her § 33-420 damages claim, which was not relevant to Renee's motion, the argument also applied to the competing quiet title claims under § 12-524, which were the sole subject of Renee's motion.    Specifically, Magdalena urged equitable tolling to counter Renee's argument that the 2003 Deed provided constructive notice of Renee's ownership claim—an argument only relevant to the quiet title claims under § 12-524.    Renee acknowledged the argument and responded to it by asserting in her reply that "equitable tolling is irrelevant to the instant Motion."    The superior court granted Renee's motion but did not address the equitable tolling argument.

**¶35**        Second, Magdalena raised equitable tolling in her motion for reconsideration of the court's ruling on the quiet title claims.    She argued that even assuming the 2003 Deed was not void, "while A.R.S. § 12-524

appears to bar Magdalena's claim for quiet title, statutes of limitation are still subject to estoppel and equitable tolling." Renee responded, arguing again that equitable tolling does not apply here. The court rejected the argument but did not explain its analysis.

¶36 Third, in a reply regarding her cross-motion for summary judgment on the § 33-420 damages claim, Magdalena argued that her claim did not accrue until she discovered the 2003 Deed in 2020. Alternately, she argued that the limitations period should be equitably tolled by the court due to Renee's alleged misdeeds. These arguments were also raised at oral argument. The superior court denied Magdalena's motion but did not address the equitable tolling or discovery rule arguments.

¶37 In sum, Magdalena sufficiently raised her arguments concerning equitable tolling and the discovery rule to the superior court. And Renee had a fair opportunity to respond to these arguments. *See Dombey*, 150 Ariz. at 482. Thus, the court of appeals erred in finding that Magdalena had not preserved these arguments for appellate review. The court of appeals should now address the merits of Magdalena's arguments.

## C. Attorney Fees Are Premature.

¶38 Both Magdalena and Renee request attorney fees pursuant to A.R.S. § 12-1103 and § 33-420. Because the court of appeals has yet to address Magdalena's equitable tolling and discovery rule arguments, neither party has yet prevailed in this lawsuit. We therefore deny both parties' requests without prejudice for the party who ultimately prevails to re-urge the request before the court of appeals or the superior court, as appropriate.

## CONCLUSION

¶39 We vacate ¶¶ 20 and 23–24 of the court of appeals' opinion and remand the case to that court to address Magdalena's equitable tolling and discovery rule arguments. We affirm the remainder of the opinion.

14

DOMINGUEZ v. DOMINGUEZ
VICE CHIEF JUSTICE LOPEZ, joined by JUSTICES BEENE and MONTGOMERY,
Concurring

LOPEZ, V. C. J., joined by BEENE, J. and MONTGOMERY, J. concurring.

¶40　　　　We agree with the majority's conclusion and thrust of its analysis—because A.R.S. § 12-524 does not expressly disqualify a forged deed from the meaning of "recorded deed," a forged deed qualifies under the statute if it is "not void upon its face," meaning that the deed contains its requisite elements. *Sparks v. Douglas & Sparks Realty Co.*, 19 Ariz. 123, 127 (1917). We write separately to elaborate on why we concur in the majority's conclusion and to emphasize the potential mischief that the statute invites—a consequence the Court cannot prevent or remedy.

¶41　　　　This is the first time that the Court has held that a deed forged by a grantee serves as a "recorded deed" under § 12-524 to displace a *sole* purported grantor's title to property. In *Sparks*, we held that a deed was a "recorded deed" under the predecessor statute to § 12-524 even though one of four purported grantors' signatures was allegedly provided under a fraudulent power of attorney. 19 Ariz. at 126–27. However, we clarified that "[i]f one of the parties alone had signed and acknowledged the deed, and the certification for registration made, and the deed placed on record, this would have been sufficient so far as the question here presented is concerned." *Id.* at 127. In other words, because only one of four grantors' signatures was allegedly forged, the deed still qualified as a "recorded deed" under the statute. *Id.* (reasoning that "[t]he fact that a person's name appears upon a deed as having been signed by power of attorney whether in truth it was signed with or without authority, and though no acknowledgment was made by or for such person, this would not make the deed void upon its face as to those parties who did properly execute it"). Although the Court has since held that deeds bearing technical deficiencies are recorded deeds under § 12-524, *Sparks* is our only case involving a fraudulent deed. *See Quality Plastics, Inc. v. Moore*, 131 Ariz. 238, 241–42 (1981) (recognizing a defective treasurer's deed containing an inadequate parcel description as a "recorded deed" under § 12-524); *Nicholas v. Giles*, 102 Ariz. 130, 131, 133–34 (1967) (holding that a tax deed, void for failure to satisfy statutory notice requirements, qualified as a "recorded deed" under § 12-524). It is not a model of clarity.

¶42　　　　The majority references the legislature's failure to include a forgery exception in § 12-524 after *Sparks* as, perhaps, an indication that the legislature did not take umbrage with our interpretation of the statute to recognize a forged deed as a "recorded deed." *Supra* ¶ 29. As noted,

however, *Sparks* did not unequivocally endorse a deed forgery in the circumstances here. Thus, before today, the legislature has never been presented with such a clear endorsement of a forged deed under the statute.

¶43         Although our jurisprudence does not necessarily compel the conclusion that a forged deed is a recorded deed under § 12-524 in these circumstances, the cases cited certainly forge a viable path to this result. And, more importantly, the structure of the statutory scheme mandates this outcome. As the majority notes—unlike § 12-524—A.R.S. §§ 12-523 and -525 include express fraud and forgery prohibitions against fraudulent or forged deeds. *Supra* ¶¶ 17–19; § 12-523(B) (excluding from "[c]olor of title" any claim that involves the "want of intrinsic fairness and honesty"); § 12-525(B) ("[N]o one claiming under a forged deed or a deed executed under a forged power of attorney shall be allowed the benefits of this section."). The legislature's election to omit a fraud or forgery exclusion from § 12-524 was purposeful. We see no textual cues to the contrary. Thus, the omitted-case canon, which provides that "[an] absent provision cannot be supplied by the courts," ends our inquiry. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012) ("What the legislature 'would have wanted' it did not provide, and that is an end of the matter."); *see also In re Riggins*, 257 Ariz. 28, 33 ¶ 25 (2024).

¶44         This Court's fidelity to our constitutional structure commands judicial modesty and restraint. Ariz. Const. art. 3; *Ariz. Sch. Bds. Ass'n, Inc. v. State*, 252 Ariz. 219, 229 ¶ 45 (2022) ("[W]e heed our constitution's fundamental premise that the division of powers necessarily impels judicial restraint, particularly in the realm of lawmaking."). This restraint applies with equal force to prohibit the Court from rewriting a statute under the guise of interpreting it to prevent a perceived injustice. *See* Scalia & Garner, *supra* ¶ 42, at 99 (noting that it is improper under the omitted-case canon for courts to augment a law to implement "the maxim that no one can benefit from his own wrong (*nullus commodum capere potest de injuria sua propria*)"). We lack authority to graft a fraudulent or forged document exception onto § 12-524, and we decline to do so.

¶45         Here, our faithful interpretation of the law potentially yields an injustice in this case and provides a blueprint for an unscrupulous actor to swindle a vulnerable person's property title through forgery—gain the trust of a vulnerable property owner, forge and record a deed to the victim's property, and pay property taxes on the forged deed for five years, perhaps

with the victims' own funds.   If the victim does not discover the forgery and contest the fraud within the five-year limitations period, the victim loses ownership of their property to the forger.   This concern is especially acute given Arizona's sizeable population of elderly citizens.   *See Estate of McGill v. Albrecht*, 203 Ariz. 525, 528 (2002) ("Arizona has a substantial population of elderly people, and the legislature was concerned about elder abuse." (quoting *In re Denton*, 190 Ariz. 152, 156 (1997))).

**¶46**          It is the legislature's prerogative to make the law.   As the majority recounts, in the historical context in which the legislature enacted the statutory predecessor to § 12-524, tolerance of the risk of fraudulent or forged deeds may have been an easy choice when weighed against the benefits of expedient resolution of widescale title disputes.   *Supra* ¶ 28. Whatever the purpose of § 12-524, the legislature is the arbiter of the wisdom of the public policy embodied in our statutes.   It is the courts' constitutional duty to apply the law as written.   If courts enforce a law deemed unwise and "the defect is serious, the legislature will cure it."   *See, e.g.*, Scalia & Garner, *supra* ¶ 42, at 100.   We merely alert the legislature to potential harms arising from the application of § 12-524 to recognize deeds containing a sole grantor's purported signature forged by a grantee as "recorded deeds."   We defer to and respect the legislature's choice whether to amend the law to foreclose this possibility.