NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAVID TREVIZO, *Plaintiff/Appellant,*

*v.*

ELIZABETH MEACHAM, et al., *Defendants/Appellees.*

No. 1 CA-CV 25-0303

FILED 12-04-2025

Appeal from the Superior Court in Maricopa County
No. CV2024-007782
The Honorable Jennifer C. Ryan-Touhill, Judge

**VACATED AND REMANDED**

COUNSEL

FFox Law LLC, Tempe
By Frank M. Fox
*Counsel for Plaintiff/Appellant*

Hymson Goldstein Pantiliat & Lohr, PLLC, Scottsdale
By John L. Lohr, Jr., James-Henry R. Courteau, David B. Goldstein
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

¶1        Arizona Revised Statutes ("A.R.S.") Section 33-401 states that a deed for the transfer of real property is not valid unless it is signed by the grantor. The question presented here is whether recording an unsigned deed makes it valid. The superior court held that it does. Because we conclude otherwise, we vacate and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶2        This case arises out of a dispute among family members over ownership of a house. Rosario Felix and her daughter, Priscilla Felix Trevizo, came into ownership of the house as joint tenants with right of survivorship in 1978.

¶3        In 2006, a quitclaim deed (the "2006 deed") was recorded that purported to transfer Ms. Trevizo's interest in the house to her mother, Ms. Felix. About two years later, a beneficiary deed (the "2008 deed") was recorded that reflected Ms. Felix's transfer of her interest in the house to another daughter, Elizabeth Felix Meacham.

¶4        David Trevizo began living in the house in 2011 or 2012. Mr. Trevizo's grandmother, Ms. Felix, died in 2015, and his mother, Ms. Trevizo, died in 2021. A dispute then arose between Mr. Trevizo and his aunt, Ms. Meacham, over ownership of the house.

¶5        In 2023, Mr. Trevizo's other aunt, Mary Felix Patton, executed a quitclaim deed (the "2023 deed") quitclaiming to Mr. Trevizo "all my interest" in the house.

¶6        Unlike the 2008 deed and the 2023 deed, the 2006 deed is not signed by the purported grantor. On the 2006 deed, the name "Priscilla Trevizo" is printed by hand on the line next to the words, "Print Name of Grantor," but the line next to the words "Signature of Grantor" is blank. The 2006 deed also contains an acknowledgment, bearing the signature and seal of a notary named Amanda K. Young, reciting that "Priscilla

Trevizo . . . acknowledged to me . . . that by his/her/their signature(s) . . . the person(s) . . . executed the instrument."[1] No evidence in the record explains why Ms. Young's signature and notary seal appears on the acknowledgement of the unsigned deed. At her deposition in this case, the notary testified that she had no recollection of Ms. Trevizo or of notarizing the 2006 deed. She further stated that any testimony she offered about the 2006 deed would be "speculative."

¶7        In April 2024, Mr. Trevizo brought a quiet title action against Ms. Meacham, her husband, and a trust they established ("Appellees"), alleging that the 2006 deed is void because his mother, the purported grantor, didn't sign it. Appellees asserted various counterclaims in response, including claims for declaratory relief, quiet title, constructive trust, and unjust enrichment. They also asserted a claim against Mr. Trevizo under A.R.S. § 33-420 based on his recording of the 2023 deed.

¶8        Appellees moved for summary judgment on all claims. They argued, first, that the 2006 deed "vest[ed Ms.] Felix with 100% ownership of the [house]" that she formerly co-owned with Mr. Trevizo's mother, and therefore that Mr. Trevizo acquired no interest in the house when his mother died in 2021. Because the 2006 deed was "duly recorded with the Maricopa County Recorder's [O]ffice," Appellees argued, the deed "is deemed to be valid" "pursuant to A.R.S. §§ 33-401(D) and 11-480."

¶9        Noting the length of time that has passed since the 2006 deed was recorded, Appellees further argued that, in any event, Mr. Trevizo's quiet title claim was barred by the three-year limitations period set forth in A.R.S. § 12-523.

¶10       Appellees also asserted that over the years Ms. Meacham and her husband maintained and paid the property taxes and other expenses relating to the house "with no contribution from" Mr. Trevizo. If nothing

---

[1]The acknowledgment reads, "On June 4, 2006, before [name of notary], appeared Priscilla Trevizo, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument." Below this language is the notary's signature and seal.

else, Appellees insisted, they were "entitled to an equitable interest" in the house and to an award of damages on their unjust enrichment claim.

¶11 Finally, Appellees asserted that Mr. Trevizo's recording of the 2023 deed entitled them to statutory damages, attorney fees, and costs under A.R.S. § 33-420. The 2023 deed was "groundless," they explained, because it purported to convey Ms. Patton's interest in the house to Mr. Trevizo even though Ms. Patton "had no interests [*sic*]" in the house to begin with.

¶12 In response, Mr. Trevizo argued, *inter alia*, that the 2006 deed is "invalid" because it is "not signed." Accordingly, he maintained, when "[his] grandmother died" in 2015, "the [house] went to Mr. Trevizo's mother by right of survivorship," and that he acquired his mother's interest when she died six years later. At a minimum, Mr. Trevizo argued, he and Appellees each own "half" of the house, "assuming" that the 2008 deed transferring Ms. Felix's interest to Ms. Meacham is "legitimate." Mr. Trevizo denied Appellees' contention that they have maintained and paid all expenses relating to the house, asserting that he has maintained the house and paid its expenses since he moved in over ten years ago.

¶13 In December 2024, the superior court granted Appellees' motion for summary judgment.[2] Noting that the 2006 deed was "on file with the Recorder's office," the court held that "any defects" in the deed were "remediated" by A.R.S. §§ 11-480(E) and 33-401(D). Accordingly, the court determined, the 2006 deed "is valid," Ms. Meacham "obtained title to the property after [Ms. Felix's] death in 2015," and Mr. Trevizo "has no interest in the property." And because Mr. Trevizo had no interest in the house, the court concluded, his recordation of the 2023 deed violated A.R.S. § 33-420.

¶14 Mr. Trevizo moved for reconsideration, submitting a declaration from a handwriting expert to bolster his challenge to the

---

[2] In his response to Appellee's motion for summary judgment, Mr. Trevizo asserted a cross-motion seeking summary judgment in his favor. The court issued an order striking Mr. Trevizo's cross-motion for summary judgment because the scheduling order issued in this case expressly prohibited the parties from "combin[ing] any motion with a responsive pleading." Mr. Trevizo does not appeal the court's order striking his cross-motion for summary judgment.

validity of the 2006 deed. The court denied Mr. Trevizo's motion for reconsideration.

¶15        In March 2025, the superior court entered final judgment quieting title to the house in Appellees as its "sole owners," with Mr. Trevizo having "no legal or equitable interest" in it. The court further determined that the 2023 deed was "wrongful" and "groundless," and awarded Appellees statutory damages under A.R.S. § 33-420. The court also awarded Appellees attorney fees and costs under both A.R.S. §§ 33-420 and 12-349.

¶16        Mr. Trevizo timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶17        Mr. Trevizo challenges the court's grant of summary judgment in favor of Appellees.

¶18        Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment *de novo*. *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291, ¶ 13 (App. 2010).

¶19        "Every deed or conveyance of real property must be *signed by the grantor* and must be duly acknowledged before [a notary]." A.R.S. § 33-401(B) (emphasis added). A deed that is not signed by the grantor is of no effect. *See Watts v. Hogan*, 111 Ariz. 536, 537 (1975) ("All parties having an interest in the land to be conveyed must sign the instrument of conveyance."); *see also Meyer v. 23526 Florence, LLC*, 1 CA-CV 22-0485, 2023 WL 3843321 at *5, ¶ 25 (Ariz. App. June 6, 2023) (mem. decision) ("To be valid, deeds must, among other things, be signed by the grantor.").

¶20        Mr. Trevizo asserts that the superior court erred in granting summary judgment in favor of Appellees, arguing, *inter alia*, that "the absence of [the] grantor's signature" on a deed is "a fundamental defect" that is not "cured" by recording the unsigned deed. In response, Appellees argue, first, that the 2006 deed is valid because "Priscilla Trevizo signed [it] in front of a notary, who acknowledged the signature and provided her notary stamp."

¶21        A review of the 2006 deed refutes Appellees' assertion that Ms. Trevizo signed it. The signature line is blank.

5

¶22 Admittedly, the acknowledgment to the 2006 deed, which bears the notary's signature and seal, contains the notary's statement reciting that Ms. Trevizo "executed" it "by . . . her . . . signature[]." The notary's statement that Ms. Trevizo signed this unsigned document is inexplicable, and, at her deposition, the notary had no explanation for it. But the notary's statement is irrelevant to the issue before us, because whether a deed is unsigned is a matter that a court decides for itself. *Cf. In re Estate of Bixby*, __ Ariz. __, __, ¶¶ 9, 16, 573 P.3d 113, 116, 118 (App. 2025) (affirming trial court's determination that purported will was not valid in part because it bore no "signature in the usual sense[,]" and rejecting purported beneficiary's argument that the decedent's handwritten notation "XO" constituted her signature). The notary's recital on the 2006 deed that Ms. Trevizo signed it does not change the fact that the 2006 deed is unsigned.

¶23 Appellees argue, next, that even if the 2006 deed wasn't signed by the purported grantor, that omission was cured when the deed was recorded. Under Subsection D of A.R.S. § 33-401, Appellees assert, "any document" containing a "defect [or] omission . . . can be deemed valid after it is recorded." Appellees' reading conflicts with the statute's text.

¶24 Subsection D of A.R.S. § 33-401 provides that

> [f]or the purposes of this section, a deed or conveyance that contains any defect, omission or informality in the certificate of acknowledgment, or for which there is any failure to perform a duty or meet a requirement in the taking of the acknowledgment, and that has been recorded in the office of the county recorder of the county in which the property is located shall be deemed to have been duly acknowledged on and after the date of its recording.

A.R.S. § 33-401(D). By its terms, Subsection D of A.R.S. § 33-401 applies only to defects or omissions "in the certificate of acknowledgement" or in "the taking of the acknowledgment[.]" *See id.* Relying on Subsection D of A.R.S. § 33-401, for example, this Court has held that a signed, recorded deed was not invalid merely because the notary "did not affix her official seal to the deed" as required by A.R.S. § 33-401(B) and "instead used her embossing seal — also known as a 'crimper' — when she notarized the deed." *Larmer v. Estate of Larmer*, 241 Ariz. 15, 16, ¶¶ 1, 3 (App. 2016). Despite the absence of the official seal required by A.R.S. § 33-401(B), the *Larmer* court held, the deed was not invalid because the notary's acknowledgement of the deed satisfied the alternative requirements of the then-effective Uniform

Recognition of Acknowledgments Act (the "URAA"), codified at A.R.S. §§ 33-501 through -508.[3] *Id.* at 19, ¶¶ 15-16.

**¶25** But nothing in Subsection D of Section 33-401 indicates that the subsection encompasses defects or omissions other than irregularities in the acknowledgment of a deed. Because we must apply Subsection D as written, we reject Appellees' request to expand Subsection D to apply to the omission of the grantor's signature. *See Mussi v. Hobbs*, 255 Ariz. 395, 402, ¶ 34 (2023) ("[A] court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." (citation omitted)). And accepting Appellant's interpretation would require us to ignore Section 33-401(B), which provides that "[e]very deed or conveyance of real property *must* be signed by the grantor[.]" (emphasis added).

**¶26** Appellees further contend that once the 2006 deed was recorded, A.R.S. § 11-480's "strict and arduous process to determine that a document is suitable for recording" resulted in a conclusive determination of the deed's validity.[4] Noting that Subsection E of Section 11-480 states that

---

[3] Arizona's URAA was repealed after *Larmer* was decided. *See* 2021 Ariz. Sess. Laws ch. 66, § 7 (1st Reg. Sess.).

[4] Section 11-480 reads, in relevant part,

A. Only an instrument that, on presentation to a county recorder for recordation, fails to meet any of the following conditions may be rejected for recordation at the time of presentation for recordation:

1. Each instrument shall have a caption briefly stating the nature of the instrument [.] . . .

2. Each instrument shall be an original and shall be sufficiently legible for the recorder to make certified copies from the photographic or micrographic record.

3. Each instrument shall have original signatures except when otherwise provided by law.

4. Each instrument dated and executed on or after January 1, 1991, shall be not larger than eight and one-half inches in width and not longer than fourteen inches and shall have a print size not smaller than ten-point type.

an instrument "accepted for recordation is not subject to a later claim of invalidity for failure to comply with the requirements of this section[,]" Appellees maintain that once the 2006 deed was recorded, Subsection E of Section 11-480 barred any challenge to its validity even though it is not signed by the purported grantor.

¶27        This is an untenable reading of Section 11-480. That statute merely sets forth the requirements for the form of documents submitted for recordation. The statute prescribes, for example, the maximum page size (8 ½" x 14"), minimum font size (10 point type), and minimum length of the top margin on the first page (two inches). A.R.S. § 11-480(A)(4), (C). And the statute requires that, unless otherwise provided by law, the signatures on recorded documents must be "original[.]" A.R.S. § 11-480(A)(3). But as this Court recognized in *Phipps v. CW Leasing, Inc.*, 186 Ariz. 397, 401 (App. 1996), Section 11-480 does not alter the substantive requirements for conveyances of rights in real property.

¶28        In *Phipps*, McCormick and Phipps signed a contract giving the latter a right of first refusal ("ROFR") to purchase the former's property. *Id.* at 399. Although the contract was not notarized, Phipps recorded it. *Id.* When McCormick later sold the property to someone else, Phipps sued to set aside the sale and enforce his ROFR. *Id.* Rejecting his claim, the superior

B. Each instrument dated and executed on or after January 1, 1991, shall have at least a one-half inch margin across the top, bottom and the left and right sides from the top to the bottom. . . . Failure to meet the one-half inch margin requirement of this subsection may affect notice imparted by the document but shall not constitute grounds for rejection for recordation pursuant to subsection A of this section.

C. The first page shall have a top margin of at least two inches, which shall be reserved for recording information. The left three and one-half inches of the top margin of the first page or sheet may be used by the public to show the name of the person requesting recording and the name and address to which the document is to be returned following recording. . . .

* * *

E. Any instrument accepted for recordation is not subject to a later claim of invalidity for failure to comply with the requirements of this section.

court held that the contract, though recorded, was ineffective to put prospective purchasers on notice of the ROFR because the contract lacked the statutorily-required certificate of acknowledgment. *Id.* On appeal, this Court affirmed. Because the contract setting forth Phipps's ROFR was "an instrument affecting real property," the Court held, A.R.S. § 33-401(B) required that it be "acknowledged." *Id.* at 401 (citation omitted). Because the document was not acknowledged, the Court concluded, "the recording of [the document] did not provide constructive notice" to prospective purchasers of the ROFR. *Id.* at 402.

**¶29**        In reaching this conclusion, the *Phipps* court rejected Phipps's argument that under Section 11-480, "the recorder's acceptance of the document for recordation cured any defect in his failing to have it acknowledged." *Id.* at 401. The Court held that

> [u]nder the express language of [Section 11-480(E)] . . . the acceptance of an instrument for recordation excuses only the failure to comply with the requirements set forth in the other subsections of that particular statute, which deal mainly with stylistic requirements. [Section 11-480(E)] does not excuse failure to comply with the acknowledgment requirement.

*Id.*

**¶30**        The *Phipps* court's holding that Section 11-480(E) does not excuse compliance with the statutory requirement that a recorded document be acknowledged, and therefore that a document lacking the required acknowledgement is ineffective, applies equally here. Under Section 33-401(B), a deed that is not signed by the grantor is void. If an unsigned, and therefore void, deed is recorded, it's still void. Section 11-480(E) does not operate to breathe life into a void deed.

**¶31**        Appellees argue, in the alternative, that the court's grant of summary judgment should be affirmed because Mr. Trevizo's quiet title claim was time-barred. *See Mining Investment Group, LLC v. Roberts*, 217 Ariz 635, 640 (App. 2008) (appellate court can affirm superior court's judgment "even if the [superior court] has reached the right result for the wrong reason." (citation modified)). According to Appellees, Mr. Trevizo's quiet title claim is subject to a three-year limitations period, *see* A.R.S. § 12-523, and therefore "his time to challenge the validity" of the 2006 deed "expired in 2009."

**¶32**        But the statute of limitations does not run against a deed that is invalid on its face. *See Estate of Dominguez v. Dominguez*, __ Ariz. __, __,

¶ 31, 567 P.3d 81, 89 (2025) (holding that the limitations period established by A.R.S. § 12-524 begins to run upon recording of a deed as long as the deed is "facially valid"); *see also Anadarko Land Corp. v. Family Tree Corp.*, 389 P.3d 1218, 1223, ¶ 16 (Wyo. 2017) ("[A] void deed is a nullity, making it ineffective to transfer title and ineffective to set a statute of limitations running."); *Arnold v. Brent*, 561 P.3d 426, 429, ¶ 11 (Colo. App. 2024) ("[A] void deed is not subject to [limitation's statute's] time bar."); *Heppler v. Esther*, 534 S.W.2d 533, 535, 537 (Mo. App. 1976) (holding that deed which was incomplete because "the space following the word 'year' was left blank" was "void on its face" and so "did not start the running of" the statutory limitations period). Because the 2006 deed is unsigned, it is invalid on its face, and so its recording did not commence the running of any limitations period. We cannot, therefore, affirm summary judgment on the alternative ground that Mr. Trevizo's claim is time-barred.

¶33         The court's grant of summary judgment in favor of Appellees on all of their claims was premised on its determination that the unsigned 2006 deed was valid because it was recorded. Because this determination was in error, the judgment must be vacated and the matter remanded for further proceedings.

## CONCLUSION

¶34         For the foregoing reasons, we reverse the award of summary judgment, vacate the judgment, and remand for further proceedings.

¶35         Mr. Trevizo requests an award of attorney fees and costs on appeal pursuant to A.R.S. §§ 12-341, -341.01, and -349. In the exercise of our discretion, we deny his request for attorney fees. He may recover his costs on appeal, subject to his compliance with ARCAP 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:         JR